{¶ 10} This case is not a matter of contract law or interpretation. Rather, we must determine whether Beechmont's employees committed a deceptive sales practice. I believe that there was enough evidence to defeat Beechmont's summary-judgment motion.
 {¶ 11} The real issue here is whether a salesperson can promise one rate all throughout the negotiations to gain assent to the deal, then draw up the "paperwork" and slip in a different rate — and then rely on the "well the dummy signed anyway" defense. In a consumer context, the answer is no.
 {¶ 12} The majority simply holds that Burns was bound by the terms of the agreement because she signed it. I agree that one who is competent to contract is generally bound by the terms of a contract that she signs, even if she did not read it.[8]
But both Burns and Lucas testified that Payne covered the contract while she was signing it. And Lucas testified that he asked Payne if the 6.2% rate was included in the paperwork. Lucas said that Payne responded that they had gotten such a good deal that they would never go anywhere else to buy a car again. How was this not at least arguably deceptive?
 {¶ 13} And there is at least a question of material fact whether Payne's actions prevented Burns from reading the contract. The mere fact that Burns signed the contract did not negate the actions taken to convince her to sign it.
 {¶ 14} We have noted previously that all that is necessary for a plaintiff's verdict under the CSPA is that the jury believe that the consumer was promised a price that was not the true price.[9] Burns did not even get to a jury — the trial court held that there were no facts for the jury to decide. The trial court was wrong.
 {¶ 15} According to her side of the story, Burns thought she was going to pay $300 each month for 60 months. According to her loan agreement, Burns had to pay $300 each month for 78 months. And Burns says that both Payne and Stephens promised her the lower rate, while neither told her of the higher rate. It is at least arguable that Burns was duped into thinking that she was getting the lower rate.
 {¶ 16} It is a violation of the CSPA to represent that a specific price advantage exists, if it does not.[10] There is at least a question of fact whether Stephens and Payne represented that a specific price advantage existed — namely, the lower interest rate — when it did not.
 {¶ 17} And it is a deceptive and unfair practice for a dealer to "fail to integrate into any written sales contract or offer, all material statements, representations or promises, oral or written, made prior to the written contract by the dealer."[11] Further, a dealer may not advertise an interest rate where the extension of credit is contingent upon qualification without disclosing that the rate is "subject to approved credit" or words to that effect.[12] If Payne and Stephens did not include information regarding the discussions about a rate of 6.2% and did not tell Burns that she might not be eligible for the lower rate, then there was at least enough of a genuine issue of material fact to defeat summary judgment.
 {¶ 18} I cannot say whether Stephens promised a rate of 6.2% or whether Payne's covering up the documents prevented Burns from reading them before she signed them. Beechmont does not even deny that Payne twice told Burns that she was getting the lower rate, or that Payne covered the paperwork as Burns signed it. Surely these are genuine issues of material fact, and summary judgment was therefore inappropriate. I cannot say definitively that Beechmont violated the CSPA. But I cannot say that it did not.
 {¶ 19} I would therefore sustain Burns's sole assignment of error and reverse the entry of summary judgment in favor of Beechmont.
 {¶ 20} Accordingly, I dissent.
[8] See Cossin v. Ron Rush Motor Sales (Sept. 25, 1986), 10th Dist. No. 86AP-182.
[9] See White v. Kent (1988), 47 Ohio App.3d 105,547 N.E.2d 386.
[10] R.C. 1345.02(B)(8).
[11] Ohio Adm. Code 109:4-3-16(B)(22).
[12] Ohio Adm. Code 109:4-3-16(B)(1).